In the Matter of the Arbitration between WALTER R. KESSLER, Respondent, and NATIONAL CASUALTY COMPANY, Appellant.

First Department, May 12, 1959.

*Robert F. Bowling* of counsel (*Bowling & Bowling,* attorneys), for appellant.

*F. Richard Sussman* of counsel (*Wikler & Gottlieb,* attorneys), for respondent.

BERGAN, J. Petitioner is a physician and a member of the New York County Medical Society. The National Casualty Company, under agreement with the medical society, has in force a group plan of professional disability insurance covering society members.

Under this plan, if the member is an insurable risk within the company's standards and insurance practice, he is entitled to issuance of one policy of basic disability coverage of $600 a month for two years and another policy of extended coverage for an additional three years of $400 a month; if not such an insurable risk, he would be entitled to policies of coverage in one half these amounts, i.e., $300 a month for two years and extended coverage of $200 a month for the additional three years.

A policy of basic coverage and a policy of extended coverage were issued by the carrier in 1956 to petitioner upon petitioner's representations as to good health, which, if true, would have conformed with the practice of the carrier in taking an " insurable " risk. The policies each provided that in the event of

disagreement with regard to " any benefit " claimed to be " due under this policy " the company and insured " may submit " such disagreement to arbitration.

In 1957 petitioner became ill and filed a claim for benefits under the basic policy for disability from September 20 to October 2 of that year. The medical proofs submitted with the claim led the carrier to believe that petitioner's statements that he was " in good health " when he applied for the policies " were not true statements ".

Upon receiving this proof of illness, the carrier elected to rescind the policies issued. It offered to issue new policies in the lesser amounts which, under the arrangement with the medical society, it would have issued to petitioner if he had not represented himself to be in good health. These policies would be for $300 a month basic coverage and $200 extended coverage.

The controversy having reached this stage, and the disputed question between the petitioner and the carrier being whether the petitioner had so misrepresented his state of health as to have vitiated the policies at their inception, the petitioner requested an arbitration.

Petitioner's letter to the medical society stated that the application for arbitration was " according to Clause 7 of the policy ", which, as it has been seen, provided for permissive arbitration of a controversy with regard to " any benefit claimed to be due under this policy ". But the nature of the controversy, as petitioner himself described it in his own words in his letter requesting arbitration, arose over the carrier's contention " that pertinent material information was withheld from them ".

Petitioner appeared personally in the arbitration proceedings and it is clear that the issue actually presented to the arbitrators, who were both physicians, was whether he had or had not misrepresented his state of health in any material respect to the carrier in his application for the policies.

The petition sets forth the issue as it went to the arbitrators. It alleges that " At the hearing, the arbitrators were bent on determining whether the petitioner had made a misstatement in his application ". Petitioner argues that this was beyond their powers; but this is exactly the issue which he himself raised and presented to the arbitrators.

The mere reference in petitioner's letter to the policy contract provision for permissive arbitration, which in turn refers to " any benefit claimed to be due under this policy " as a subject of permissive arbitration, does not limit the scope of the arbi-

tration to whether or not a benefit is due " under " the policy. The petitioner's written request for arbitration went to the very heart of the validity of the contract itself and described a controversy as to the inception of the policy.

Even if the words of written submission were to be more narrowly construed, it is clear that petitioner before the arbitrators himself broadened the submission. He submitted to the arbiters through the medical society committee a " case history " in which he argued on the merits that the medical information not given to the company on the application for insurance was not significant, and, as to some of it, " of no clinical importance ".

The submission, as petitioner thus framed it for arbitration in his letter to the medical society and as it actually went to the arbitrators, involved, therefore, the fundamental issue whether the contract of insurance was or was not voidable for misrepresentation. Petitioner's description of the controversy arising because the company " has taken the stand " that " pertinent material information was deliberately withheld from them " is clearly a statement in nontechnical language of what is the fact here, that the controversy between the parties hung on whether the petitioner had in his application misrepresented, i.e., " deliberately withheld ", the true condition of his health.

The award was, first of all, to disallow the claim under the policies. The decision states: " The claim under the basic and extended coverage policies issued June 21, 1956 is denied." If the arbitrators properly had before them the question of validity of the policies this is decisive of the controversy submitted to them.

Petitioner argues that it would be beyond the competency of arbitrators to decide the validity of the very contract itself which contained the arbitration clause; and the court at Special Term was of this opinion. But the validity of the contract of insurance is the very thing that the petitioner voluntarily sought to arbitrate. There can be no doubt that the validity of an insurance policy, as it may turn on misrepresentation in the application, is an arbitrable controversy within section 1448 of the Civil Practice Act which upon proper submission may be decided by arbitrators.

Where the actual submission of the controversy is broader than the description of arbitrable matters in an agreement between the parties, it may amount to a waiver of a limitation in the area of arbitrable controversy. For example, the build-

ing contract between the parties in *Matter of Priore* v. *Schermerhorn* (237 N. Y. 16) provided for arbitration only of disputes over additional work or for loss due to delay. There was "no jurisdiction under the terms of the contract over any other matters" (p. 17).

Nevertheless the parties actually controverted before the arbitrators an additional question, i.e., whether some of the work was defective, and the award embraced this subject. In the form in which the issue was submitted the court held that there was a waiver by the objecting party of the limitations in the contract on the area of arbitration. The court noted that when the objecting party "presented all his claims to arbitration not confining himself to articles III and VIII he opened up the whole matter and cannot now object because the owner also presented his claims. In other words, the method of procedure before the arbitration amounted to a waiver of the restrictions under the contract and give the arbitrators jurisdiction to determine all matters in dispute" (CRANE, J., *Matter of Priore* v. *Schermerhorn, supra,* p. 18).

The construction of the contract of arbitration may itself lie within the area of decision by the arbitrators. (*Itoh & Co.* v. *Boyer Oil Co.,* 198 App. Div. 881.) Issues of reinstatement to employment in a labor contract and the interpretation of the contract itself, for example, were held implicit to the submission in *Matter of Samuel Adler, Inc.* (*Local 584, etc.*) (282 App. Div. 142). If the objecting party in *Priore* was held bound by the submission on the claim made by the adverse party, petitioner here is certainly bound by the scope of controversy as he framed and submitted it.

There followed upon the submission a clear and definitive adjudication of the controversy by the arbitrators. At the opening of their decision they state: "The claim under the basic and extended coverage policies issued June 21, 1956 is denied. Claimant is to surrender these policies for cancellation." This is not only responsive to the submission; it is a full adjudication of it — that because claimant had represented himself as an insurable risk and was not in fact such a risk, the policies were cancelled. This is a "mutual, final and definite award" (Civ. Prac. Act, § 1462, subd. 4).

The decision is consistent with the provisions of the application for insurance signed by petitioner, by which he agreed in writing that right to recover under any policy issued "shall be barred" if material facts in the application were misrepresented.

The arbitrators went further, however, in their award. They directed that new policies be issued retroactively to petitioner for the lesser amounts based on his being at the time of application a noninsurable risk. The offer to issue these policies was made to petitioner in writing by the company before he requested arbitration and thus it may be deemed a part of the controversy. It seems reasonable to think that if the petitioner's main contention went against him on his submission he would take the policies thus offered in the lesser amounts.

Such an alternative seems to fall within the scope of the submission; but whether it is within it or not, petitioner is not aggrieved by the direction to the company to issue new policies; he has a complete remedy: not to take them if he decides he does not want them. The vital part of the award is that he is not entitled to benefit within the policies that have been issued; this answers the submitted controversy in full scope; and the additional directions are either surplusage or do not adversely affect petitioner.

At the end of the paragraph of the award containing the decision, the arbitrators signed the award; and below this a notation appears which apparently, but not conclusively, is attributable to the arbitrators, that the decision "may be subject to reopening of arbitration if additional facts" concerning underwriting principles of the company are developed.

This is not a part of the decision, which is complete in itself; and it does not vitiate or invalidate the award. It seems a gratuitous commentary on the award, perhaps by the arbitrators. It does not deprive the award itself of completeness or finality. It describes a future possibility resting on another future possibility. It is mere surplusage, not affecting the award, and it should be stricken out or disregarded. (Civ. Prac. Act, § 1462-a, subds. 2, 3.)

The order vacating the award should be reversed on the law and the facts, with costs to appellant; the award reinstated and confirmed; and the paragraph below the signatures of the arbitrators stricken therefrom.

RABIN, J. P., M. M. FRANK, VALENTE and STEVENS, JJ., concur.

Order unanimously reversed on the law and on the facts, with $20 costs and disbursements to the appellant; the award reinstated and confirmed; and the paragraph below the signatures of the arbitrators stricken therefrom.